1

2

3

4            **UNITED STATES DISTRICT COURT**

5                 EASTERN DISTRICT OF CALIFORNIA

6

7  JLG ENTERPRISES, INC., a California            CASE NO. 1:10-cv-02138-AWI-SKO
   corporation,

8                          Plaintiff,             **FINDINGS AND
                                                  RECOMMENDATIONS THAT
9          v.                                     DEFENDANT'S COUNTERCLAIM
                                                  BE DISMISSED AND THAT
10 EXCALIBUR SIRES, INC., a Minnesota             DEFAULT JUDGMENT BE
   corporation,                                   ENTERED IN FAVOR OF PLAINTIFF**

11
                           Defendant,             **OBJECTIONS DUE: 20 DAYS**
12

13 _____

14 EXCALIBUR SIRES, INC.,

15
                           Counterclaimant,
16
           v.
17

18 JLG ENTERPRISES, INC.,

19
                           Counterdefendant.
20 _____/

21

22                        **I.  INTRODUCTION**

23        Plaintiff JLG Enterprises, Inc., ("JLG") seeks default judgment and a case-terminating

24 sanction against Defendant Excalibur Sires, Inc.'s ("Excalibur") due to Excalibur's failure to comply

   with Court orders requiring Excalibur to provide responses to JLG's discovery requests.
25
          For the reasons set forth below, the Court RECOMMENDS that DEFAULT JUDGMENT
26
   be ENTERED in favor of JLG and against Excalibur and that Excalibur's counterclaim be
27
   DISMISSED with prejudice.
28

## II. BACKGROUND

On June 1, 2011, JLG filed a motion to compel based on Excalibur's complete failure to provide responses to JLG's outstanding discovery requests consisting of Interrogatories, Requests for Admission, and Requests for Production of Documents.  (Doc. 60.)  Excalibur filed a statement of non-opposition to the motion and a declaration from counsel in opposition to JLG's request for sanctions.  (Docs. 63, 63-1.)

On June 27, 2011, the Court issued an order requiring Excalibur to provide responses to JLG's Interrogatories and Requests for Production of Documents within 30 days from the date of the order.  (Doc. 67.)  On August 2, 2011, JLG filed a status report indicating that Excalibur did not comply with the Court's June 27, 2011, order and that no responses to the outstanding discovery requests were served.  (Doc. 69.)  In its status report, JLG requested that the Court impose a case-terminating sanction and enter default judgment against Excalibur.  (Doc. 69, 2:6-12.)

On August 12, 2011, the Court issued an order to show cause in which Excalibur was ordered to file a statement within ten (10) days of the order as to why monetary sanctions or default judgment should not be imposed against it for failing to comply with the Court's June 27, 2011, discovery order.  (Doc. 70.)  Excalibur was cautioned that the Court would be inclined to recommend terminating sanctions pursuant to Federal Rule of Civil Procedure 37(b)(1) if Excalibur did not respond to the order to show cause.  (Doc. 70, 3:1-6.)  Excalibur failed to file a response.  On August 17, 2011, JLG filed a statement of additional costs, noting again that Excalibur had failed to provide responses pursuant to the discovery order.  (Doc. 71.)

On September 9, 2011, the Court issued another order to show cause in which Excalibur was ordered to submit a statement in writing within twenty (20) days as to why default judgment should not be entered against Excalibur and why Excalibur's claim should not be dismissed with prejudice. (Doc. 72.)  Excalibur was warned that failure to respond to the order to show cause would result in a recommendation that case-terminating sanctions be imposed, default judgment be entered against it, and monetary sanctions be awarded due to Excalibur's failure to provide discovery responses. JLG was also ordered to submit proof of damages as to the amount sought in default judgment within ten (10) days.

On September 19, 2011, JLG filed proof of its damages. (Docs. 73-75.) Excalibur's response to the order to show cause was due by October 3, 2011.[1] Excalibur failed to file a response.

On October 12, 2011, the Court issued an order granting JLG's request for attorney's fees based on Excalibur's failure to comply with discovery and an order requiring JLG to submit additional information regarding interest sought. (Docs. 77, 78.) JLG filed a statement regarding interest on October 21, 2011. (Doc. 79.)

## III. DISCUSSION

### A. Legal Standard

Pursuant to Federal Rule of Civil Procedure 37(b)(1), a party's failure to comply with a court's discovery order may be treated as contempt of court, and the court may order the imposition of sanctions. Discovery sanctions that may be imposed include the following: (1) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (2) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters into evidence; (3) striking pleadings in whole or in part; (4) staying further proceedings until the order is obeyed; (5) dismissing the action or proceeding in whole or in part; or (6) rendering a default judgment against the disobedient party. Fed. R. Civ. P. 37(b)(2)(A)(i)-(vi).

### B. Default Judgment Should Be Entered and Case-Terminating Discovery Sanction Imposed Against Excalibur

JLG has requested that the Court enter default judgment in its favor and impose a case-terminating sanction against Excalibur due to Excalibur's noncompliance with the Court's June 27, 2011, discovery order. (Doc. 69, 2:6-12.) The Court has previously found that Excalibur's complete refusal to participate in discovery hampered the progress of discovery and the litigation in general. (Doc. 70, 3:1-3.) As such, discovery sanctions are warranted.

As noted above, Rule 37(b)(2)(A)(v)-(vi) authorizes the Court to dismiss an action or proceeding in whole or part and to enter default judgment if a party fails to obey a Court's discovery

---

[1] This date reflects application of the Federal Rules of Civil Procedure 6(a)(1)(C), 6(a)(6)(A), and 6(d).

order.  On June 27, 2011, the Court ordered Excalibur to provide responses to JLG's interrogatories and request for production of documents within thirty (30) days from the date of the order (Doc. 67); Excalibur failed to comply.  On August 12, 2011, the Court issued an order to show cause as to why sanctions should not be imposed upon Excalibur for failing to respond to the Court's order.  (Doc. 70).  Excalibur was ordered to file a response to the order to show cause within ten (10) days of the order; Excalibur again failed to comply.

On September 9, 2011, the Court issued a final order to show cause, requiring Excalibur to explain in writing why default should not be entered against it and why its counterclaim should not be dismissed with prejudice.  (Doc. 72.)  The Court also required JLG to submit proof of damages as to the amount sought in default judgment.  (Doc. 72.)  JLG's proof of damages was due within ten (10) days of the issuance of the order to show cause and Excalibur's response was due within twenty (20) days so as to provide Excalibur notice of the amount and nature of the damages sought against it and an opportunity to respond accordingly.  Excalibur was cautioned that the failure to respond would result in a recommendation that default judgment be entered against it and that its counterclaim be dismissed with prejudice.  (Doc. 72, 3:14-16.)  On September 19, 2011, JLG filed declarations in support of its damages.  (Docs. 73-75.)  Excalibur failed to file a response to the Court's order.

Rule 37(b)(1) provides that a party's failure to comply with a court's discovery order may be treated as contempt of court.  Rule 37(b)(2) authorizes the imposition of discovery sanctions.  Such discovery sanctions are at the discretion of the court and are only reviewed for abuse of discretion. *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007); *see also Link v. Wabash R.R. Co.*, 370 U.S. 626, 633 (1962).  The Ninth Circuit has developed a five-part test to determine whether a case-dispositive discovery sanction under Rule 37(b)(2) is just: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. *Conn. Gen. Life Ins.*, 482 F.3d at 1096 (citation and quotation marks omitted).  There are sub-parts for the fifth factor

1  as to "whether the court has considered lesser sanctions, whether it tried them, and whether it warned

2  the recalcitrant party about the possibility of case-dispositive sanctions." *Id*. (citation omitted).

3       The first two factors regarding the public's interest in expeditious resolution and the Court's

4  need to manage its docket favor dismissal.   Excalibur has now completely disengaged from

5  participation in this action, as evidenced by its lack of compliance with the Court's discovery order

6  and its complete failure to respond to both orders to show cause.  *See, e.g.*, *Turner v. Spence*,

7  No. CIV S-07-0022 GGH, 2009 WL 3126199, at *2 (E.D. Cal. Sept. 28, 2009).  Further, this Court

8  recently noted that:

9       Dismissal in this case serves the public interest in expeditious resolution of litigation,
    as well as the court's need to manage its docket.  This Court's docket is overburdened
10      with in excess of 1300 cases [per judge] with each addressing significant and
    important legal issues and facts as in the current case.  The Court does not have the
11      resources to manage delay and mitigate prejudice in a particular case.  [The
    non-responding party's] conduct interferes with the Court's docket management and
12      the public interest in effective resolution.

13  *Stewart v. City of Porterville*, No. 1:10-cv-00199 LJO SKO, (Doc. 22, 3:27-4:3) (E.D. Cal.

14  September 6, 2011).

15       The third factor regarding prejudice to the party seeking sanctions also weighs in favor of

16  terminating sanctions.  JLG's complaint alleges claims for (1) breach of livestock service agreement,

17  (2) unjust enrichment, (3) account stated, (4) open book account, (5) work, labor, services, and

18  materials received, (6) quantum meruit, and (7) enforcement of livestock lien.  (Doc. 1-3.)  JLG

19  prayed for damages in the amount of $160,964.51, plus applicable interest, based on Excalibur's

20  alleged breach of an oral agreement to provide services to Excalibur's bulls including boarding,

21  feeding, veterinary and general health services, and semen collection.  (Doc. 1-3.)  On March 22,

22  2011, the Court granted JLG's application authorizing the sale of livestock and ordered that the

23  proceeds of the sale be placed in an interest-bearing account with the Clerk of the Court.  (Doc. 49.)

24  On June 13, 2011, JLG deposited $30,725.00 with the Court; this money remains on deposit pending

25  final judgment in this action.  (Doc. 64.)  Excalibur's refusal to participate not only in the discovery

26  process but in any of the litigation proceedings prejudices JLG's ability to resolve this case.

27       It also appears that Excalibur has no interest in continuing this litigation as it has been

28  willfully noncompliant with several Court orders.  Excalibur's apparent refusal to participate in the

case weighs against the public policy factor favoring disposition of cases on their merits, as it implies a waning confidence in the merits of the action.  *See Turner*, 2009 WL 3126199, at *2.  Further, the fifth factor also weighs in favor of terminating sanctions, as no lesser sanction is feasible.  Excalibur has not provided discovery responses despite the Court's order requiring responses.  (Doc. 67, 4:13-5:18.)  Excalibur has ignored two orders to show cause cautioning it that the Court would recommend the imposition of a case-terminating sanction and default judgment against Excalibur if Excalibur failed to respond.  (Docs. 70, 3:1-6; Doc. 72, 3:14-16.)  Excalibur failed to comply with any of the Court's orders.  As such, the Court believes that Excalibur will continue to ignore any lesser sanction imposed.

Considering all the factors, a terminating sanction is warranted.  Accordingly, the Court RECOMMENDS that DEFAULT JUDGMENT be ENTERED against Excalibur and in favor of JLG.  Further, the Court RECOMMENDS that Excalibur's counterclaim against JLG be DISMISSED with prejudice.

**C.      Default Judgment to be Awarded to JLG**

**1.      Amount Requested by JLG**

JLG's complaint indicates in its prayer for relief that JLG is seeking the following: (1) damages in the principle amount of $160,964.51; (2) pre- and post-judgment interest at the contractual rate of eighteen percent (18%) per annum; (3) costs and attorney's fees; (4) declaratory relief from the Court that it has a general Livestock Service Lien; (5) a Court order authorizing the sale of Excalibur's bulls that were in JLG's possession; and (6) other and further relief that the Court deems just.  (Doc. 1-3, 12:5-20.)

On September 19, 2011, pursuant to the Court's September 9, 2011, order (Doc. 72), JLG submitted declarations from its president, accounts receivable clerk, and counsel in support of its application for default judgment.  (Docs. 73-75.)  JLG's president, Jack Lerch, declares that JLG is now seeking damages in the principal amount of $242,990.24, pre-judgment interest at the contractual rate of 18% in the amount of $61,505.93, costs associated with the sale of the bulls in the amount of $3,814.06, and additional costs in the amount of $657.15, for a total amount of $308,967.38.  (Doc. 73, Lerch Decl., ¶ 13.)

**2.     JLG's Damages are Limited to Amount Pled in the Complaint**

As discussed in the Court's October 12, 2011, order requiring JLG to submit additional information (Doc. 77), JLG's damages on default judgment are limited to the amount pled in the complaint.  Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."); *see also United States v. Fong*, 300 F.2d 400, 413 (9th Cir. 1962) (finding that the court was "unable to escape the explicit and emphatic mandate of Rule 54(c)" and thus limited the default judgment against the defendant to the amount pled in the plaintiff's complaint); *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 923 (C.D. Cal. 2010) ("only the amount prayed for in the complaint to be awarded to the plaintiff in a default").

Accordingly, JLG's damages are limited to $160,964.51.  (Doc. 1-3, 12:5-20.)

**3.     JLG's Interest is Limited to Ten Percent**

JLG's complaint seeks interest at the rate of 18% per annum.  As discussed in the Court's October 12, 2011, order requiring JLG to submit additional information (Doc. 77), under California law "[i]f a contract entered into after January 1, 1986, does not stipulate a legal rate of interest, the obligation shall bear interest at a rate of 10 percent per annum after a breach."  Cal. Civ. Code § 3289(b).[2]  The parties indicated that they entered into their oral agreement on or about January 26, 1994, after the date indicated in Section 3289(b).  (Docs. 1-3, ¶ 8; Doc. 6, p. 14, ¶ 21.)  The invoices submitted with the complaint and in support of default judgment do not indicate a rate of interest and thus fail to show the interest rate agreed upon.  (Doc. 1-3, pp. 13-19; Doc. 74-2, pp. 1-6; Doc. 74-3, 2-108.)  As such, JLG cannot show that the parties agreed to a rate of interest greater than 10%.

On October 21, 2011, JLG filed a statement regarding interest indicating that it is willing to limit the interest sought to 10%.  (Doc. 79.)

**4.     Amount to be Awarded to JLG**

JLG provides declarations and exhibits from its president, Jack Lerch, and its accounts receivable clerk, Kristin Hooper, in support of its request for default judgment.  (Docs. 73, 74.)

---

[2]  The Court has previously determined that California law applies to this dispute.  (Doc. 49, 7:5-13.)

These declarations and exhibits provide sufficient proof to warrant an award of $160,964.51, the amount pled in the complaint. (Docs. 73, Exhs. A-C; 74, Exhs. A-D.)

Pursuant to the Court's order, JLG has provided an interest statement in support of its application for default judgment. (Docs.77, 79.) JLG calculated interest at the legal rate of 10% based on the damages pled in the complaint. (Doc. 79.) Based upon JLG's request, interest should be awarded in the amount of $18,301.50. (Doc. 79.)

On March 22, 2011, the Court granted JLG's application for an order authorizing the sale of livestock and on March 31, 2011, it issued an order authorizing the sale of livestock. (Docs. 49, 52.) The Court required that the proceeds of the sale be deposited with the Clerk on the Court and placed in an interest-bearing account. (Doc. 52, 4:4-7.) On June 14, 2011, JLG deposited the total sum of $30,725.00 with the Clerk of the Court, the proceeds derived from the June 8, 2011, sale of the livestock. (Doc. 64.) The amount on deposit in this account should be released to JLG and deducted from the total amount of the final judgment.

JLG's president, Jack Lerch, has requested costs associated with the sale of the livestock in the amount of $3,814.06. (Doc. 73, Lerch Decl., ¶ 12, Exh. C.) Pursuant to the Court's orders, all proceeds from the sale were to be deposited with the Clerk of the Court; JLG was not authorized to deduct costs of the sale at that time. (Doc. 49, 28:6-29:2.) Reimbursement of these costs at this time is now appropriate as there is no longer a question concerning the outcome of this dispute. As such, JLG should now be allowed to recover the costs of the Court-authorized sale of livestock in the amount of $3,814.06.

JLG also seeks costs for court filing fees, service of process, and transcription of court proceedings in the amount of $657.15 (Doc. 73, Lerch Decl., ¶ 13; Doc. 75, Sousa Decl., ¶ 2, Exh. A.) This request should be granted.

Accordingly, judgment should be awarded to JLG in the amount of $160,964.51 in damages, $18,301.50 in interest, $3,814.06 in costs associated with the sale of livestock, and $657.15 in other costs, for a total sum of $183,737.22. The funds in the amount of $30,725.00 (plus any accrued interest) deposited with the Clerk of the Court should be released to JLG and deducted from the total amount of judgment. Excalibur's counterclaim should be dismissed with prejudice.

## IV.  CONCLUSION AND RECOMMENDATION

Based on the foregoing, the Court RECOMMENDS that:

1.      JLG's request for a terminating sanction be GRANTED;

2.      Excalibur's counterclaim be DISMISSED WITH PREJUDICE;

3.      DEFAULT JUDGMENT be ENTERED against Excalibur and in favor of JLG as follows:

       a.      Monetary damages in the amount of $160,964.51;

       b.      Interest at 10% in the amount of $18,301.50;

       c.      Costs associated with the Court approved sale of livestock in the amount of $3,814.06; and

       d.      Additional costs in the amount of $657.15.

4.      The proceeds of the livestock sale currently deposited with the Clerk of the Court in the amount of $30,725.00 (plus any interest) be released to JLG and deducted from the amount of the final judgment.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within twenty (20) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

**Dated:   November 9, 2011**            /s/ Sheila K. Oberto
                                  UNITED STATES MAGISTRATE JUDGE